UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| VOLTSTAR TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> FANTASIA TRADING LLC, ANKER INNOVATIONS CO., LIMITED, and ANKER TECHNOLOGY CORPORATION, <br><br> Defendants. | CASE NO. 2:23-cv-01003 <br><br> **COMPLAINT FOR PATENT INFRINGEMENT** <br><br> **JURY DEMAND** |

Plaintiff VOLTSTAR TECHNOLOGIES, INC. by and through its undersigned counsel, brings this Complaint against Defendants FANTASIA TRADING LLC, ANKER INNOVATIONS CO., LIMITED, and ANKER TECHNOLOGY CORPORATION for Patent Infringement, and in support, alleges as follows:

**NATURE OF THE LAWSUIT**

1. This is an action for patent infringement of United States Patent Number 9,024,581, and its Reissue Patent Number RE48,794 E (hereinafter, the " '794 Patent") arising under the patent laws of the United States Title 35, United States Code §§ 1 *et seq.* to enjoin

further infringement and obtain damages resulting from Defendants' unauthorized manufacture, use, offer to sell and sale in the United States of products identified and described herein in violation of Plaintiff Voltstar's rights under U.S. Patent No. 7,910,833, U.S. Patent No. 7,960,648, and U.S. Patent Number 9,024,581 which was reissued as Patent Number RE48,794 E. Plaintiff seeks permanent injunctive relief and monetary damages resulting from Defendants' infringement.

## JURISDICTION AND VENUE

2. This Court has original and exclusive subject matter jurisdiction pursuant to 28 U.S.C. § 1331; 28 U.S.C. § 1338(a); and 35 U.S.C. § 271.

3. This Court has personal jurisdiction over the Defendants.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1400(b) because Defendants have committed acts of infringement and has a regular and established place of business within this judicial district and division.

## THE PLAINTIFF

5. Plaintiff, Voltstar Technologies, Inc. ("Voltstar"), is an Illinois Corporation with a principal place of business located at P.O. Box 3727, Barrington, IL 60010.

## THE DEFENDANTS

6. Defendant, FANTASIA TRADING LLC is a Delaware limited liability company registered to do business in Washington, with offices located at 5350 Ontario Mills Parkway, Suite 100, Ontario, CA 91764, and can be served by serving its Registered Agent, Meng Yang, at 10900 NE 8th Street, Suite 501, Bellevue, WA, 98004.

7. Defendant, ANKER INNOVATIONS CO., LIMITED is a limited company organized under the laws of Hong Kong with its principal place of business at 10900 NE 8th

Street, 5th Floor, Bellevue, WA 98004. Upon information and belief, co-defendant Fantasia Trading LLC is owned and operated by Anker Innovations, Ltd. to run its operations within the United States.

8. Upon information and belief, Defendant, ANKER TECHNOLOGY CORPORATION is a Delaware corporation with its principal place of business at 10900 NE 8th Street, 5th Floor, Bellevue, WA, 98004, and can be served by serving its Registered Agent, Business Filings Incorporated, at 108 W 13th Street, Wilmington, DE 19801. Anker Technology Corporation manufactures, markets, and sells the Accused Products.

## THE PATENTS-IN-SUIT

### THE '794 PATENT

9. Voltstar owns all right, title and interests in, and/or has standing to sue for infringement of United States Patent Number RE48,794 E (the " '794 patent"), entitled "Charger Plug With Improved Package", issued October 26, 2021. A copy of the '794 Patent is attached hereto as **Exhibit 1**.

10. Prior to May 21, 2008, James W. McGinley, Donald Rimdzius, and David P. Marcusen, invented a novel and non-obvious Charger Plug with Improved Package.

11. McGinley, Rimdzius, and Marcusen applied for and obtained United States Patent No. 9,024,581 (the "'581 patent") entitled "Charger Plug with Improved Package Electrical Charger" which was duly and legally issued on May 5, 2015.

12. McGinley, Rimdzius and Marcusen assigned all right, title and interest in and to the '581 Patent to Horizon Technologies, Inc. in May, 2008, which was recorded at the United States Patent and Trademark Office on May 21, 2008 at Reel 20979, Frame 56. Horizon Technologies, Inc. changed its name to Voltstar Technologies, Inc. and recorded such change of

name at the United States Patent and Trademark Office on March 1, 2010, and corrected on November 22, 2010 at Reel 25411, Frame 783.

13. In general, non-legal terms, the '581 Patent relates to a Charger that is to be connected between a source of AC power, such as a wall outlet, and a device such as a mobile phone that includes a battery with the battery being rechargeable through the use of DC power. The size and shape of the Charger are such that upon plugging the Charger into a source of AC power such as a wall outlet, (a) the Charger does not block or interfere with the use of adjacent outlets and (b) the Charger does not interfere with objects or furniture that may be placed adjacent to or in front of the outlet.  In addition, the size and shape of the Charger are such that (a) a power cord for the device to be charged may be easily inserted into and removed from the Charger while the Charger is plugged into the source of AC power and (b) removal of the power cord from the Charger can be accomplished without removal of the Charger from the source of AC power. An example of the "Charger Plug with Improved Package Electrical Charger" is shown below:



14. On October 26, 2021, the U.S. Patent No. 9,024,581 was reissued as Patent Number US RE48,794 E ("the '794 Patent"). The reissued '794 Patent, in part, specifically amended Claim 1(i) to now state: "being sized so that the charger plug housing comprises a longitudinal length extending between the front wall and the rear end and the longitudinal length is less than 2.0 inches, a width of the housing outer profile being less than 1.75 inches …"[1]

15. Pursuant to 35 U.S.C. § 252, Claim 1 of the reissued '794 Patent is substantially identical with the original U.S. Patent No. 9,024,581 in that it has only limited the sizing dimensions of the claimed invention. Therefore, the reissued '794 Patent is a continuation of the original U.S. Patent No. 9,024,581 and has effect continuously from the date of the original patent as May 5, 2015.

### THE '833 PATENT

16. Voltstar owns all right, title and interests in, and/or has standing to sue for infringement of United States Patent Number 7,910,833 (the "'833 Patent"), entitled "Energy-Saving Power Adapter/Charger", issued March 22, 2011.  A copy of the '833 Patent is attached hereto as **Exhibit 2**.

17. Cellular telephones have become ubiquitous in use across society.

18. Prior to February 2017, James McGinley, Valerie McGinley, and Donald Rimdzius ("McGinley *et al*"), employees of Voltstar Technologies, Inc., invented new and useful

---

[1] The previous language of the U.S. Patent No. 9,024,581 Claim 1(i) stated: "being sized so that the charger plug housing comprises a longitudinal length extending between the front wall and the rear end and the longitudinal length is equal to or less than 2.0 inches …"

On reissue, the USPTO amended the claim language. The bolded language was omitted and the italicized portion was included, shown as follows: "being sized so that the charger plug housing comprises a longitudinal length extending between the front wall and the rear end and the longitudinal length is [**equal to or**] less than 2.0 inches, *a width of the housing outer profile being less than 1.75 inches …*"

improvements to energy saving cables and various power devices for use with an electrical device, which provide low-power consumption of phantom load or intermittent power consumption or no power consumption *(see 833 patent col. 10, line 45)* for use with a wide variety of electronic devices when in an "off state", and the means to turn back "on" the power device, among other benefits.

19. Valerie L. McGinley, James W. McGinley, Donald Rimdzius assigned all right, title and interest in and to the '833 Patent to Horizon Technologies, Inc.

20. In general, non-legal terms, the '833 Patent relates to a charger that automatically shuts off when a device is fully charged or not plugged in, reducing "vampire" or "phantom" load. This feature reduces power consumption and extends battery life.

### THE '648 PATENT

21. Voltstar owns all right, title and interests in, and/or has standing to sue for infringement of United States Patent Number 7,960,648 (the "'648 Patent"), entitled "Energy-Saving Cable Assemblies", issued June 14, 2011.  A copy of the '648 Patent is attached hereto as **Exhibit 3**.  The '648 is a continuation of and claims priority to the '833 Patent.

22. Prior to October 15, 2008, James W. McGinley, Donald Rimdzius, Valerie L. McGinley and Dominic James Hogan invented a novel and non-obvious Energy Saving Cable Assemblies.

23. James W. McGinley, Donald Rimdzius, Valerie L. McGinley and Dominic James Hogan assigned all right, title and interest in and to the '648 Patent to Horizon Technologies, Inc.

24. In general, non-legal terms, the '648 Patent, as a continuation of the '833 Patent, also relates to a charger, used in conjunction with a mobile electronic device, that automatically

shuts off when a device is fully charged or not plugged in, reducing "vampire" or "phantom" load. This feature reduces power consumption and extends battery life.

## DEFENDANTS' PRODUCTS

### Accused Product #1 – Anker Powerport III 20 W Cube

25. Defendants make, use, offer for sale and sell Anker Powerport III 20 W Cube (hereinafter referred to as "20 W Cube"). Examples of the 20 W Cube distributed by Defendants are shown below.

 

26. Defendants advertise the use of and sell its 20 W Cube which is a *charger* that is to be connected between a source of AC power, such as a wall outlet, and a device such as a mobile phone that includes a battery with the battery being rechargeable through the use of DC power.

27. In particular, the 20 W Cube distributed by Defendants employ a reduced plug-size charger plug, that upon plugging the 20 W Cube into a source of AC power such as a wall outlet, the 20 W Cube does not block or interfere with the use of adjacent outlets.

28. Moreover, the size and shape of the 20 W Cube are such that a power cord for the device to be charged may be easily inserted into and removed from the 20 W Cube while the

charger is plugged into the source of AC power and removal of the power cord from the 20 W Cube can be accomplished without removal of the charger from the source of AC power.

29. Attached hereto as **Exhibit 4** is a Claim Chart that illustrates each element of the infringing 20 W Cube as compared to Claim 1 in the '794 Patent.

30. Defendants infringed at least one of the claims of the '794 Patent by offering to sell and by selling a charger plug identified as 20 W Cube.

31. The 20 W Cube has a longitudinal length less than 2 inches, approximately 1.322 inches, and a width of less than 1.75 inches, approximately 1.276 inches.

**Accused Product #2 – Anker Powerport III Nano**

32. Defendants make, use, offer for sale and sell Anker Powerport III Nano (hereinafter referred to as "Powerport III Nano"). Examples of the Powerport III Nano distributed by Defendants are shown below.

 

33. Defendants advertise the use of and sell its Powerport III Nano which is a c*harger* that is to be connected between a source of AC power, such as a wall outlet, and a device such as

a mobile phone that includes a battery with the battery being rechargeable through the use of DC power.

34. In particular, the Powerport III Nano distributed by Defendants employ a reduced plug-size charger plug, that upon plugging the Powerport III Nano into a source of AC power such as a wall outlet, the Powerport III Nano does not block or interfere with the use of adjacent outlets.

35. Moreover, the size and shape of the Powerport III Nano are such that a power cord for the device to be charged may be easily inserted into and removed from the Powerport III Nano while the charger is plugged into the source of AC power and removal of the power cord from the Powerport III Nano can be accomplished without removal of the charger from the source of AC power.

36. Attached hereto as **Exhibit 5** is a Claim Chart that illustrates each element of the infringing Powerport III Nano as compared to Claim 1 in the '794 Patent.

37. Defendants infringed at least one of the claims of the '794 Patent by offering to sell and by selling a charger plug identified as Powerport III Nano.

38. The Powerport III Nano has a longitudinal length less than 2 inches, approximately 1.165 inches, and a width of less than 1.75 inches, approximately 1.076 inches.

### Accused Product #3 – Anker Nano II Pro

39. Defendants make, use, offer for sale and sell Anker Nano II Pro (hereinafter referred to as "Nano II Pro"). Examples of the Nano II Pro distributed by Defendants are shown below.



40. Defendants advertise the use of and sell its Nano II Pro which is a *charger* that is to be connected between a source of AC power, such as a wall outlet, and a device such as a mobile phone that includes a battery with the battery being rechargeable through the use of DC power.

41. In particular, the Nano II Pro distributed by Defendants employ a reduced plug-size charger plug, that upon plugging the Nano II Pro into a source of AC power such as a wall outlet, the Nano II Pro does not block or interfere with the use of adjacent outlets.

42. Moreover, the size and shape of the Nano II Pro are such that a power cord for the device to be charged may be easily inserted into and removed from the Nano II Pro while the charger is plugged into the source of AC power and removal of the power cord from the Nano II Pro can be accomplished without removal of the charger from the source of AC power.

43. Attached hereto as **Exhibit 6** is a Claim Chart that illustrates each element of the infringing Nano II Pro as compared to Claim 1 in the '794 Patent.

44. Defendants infringed at least one of the claims of the '794 Patent by offering to sell and by selling a charger plug identified as Nano II Pro.

45. The Nano II Pro has a longitudinal length less than 2 inches, approximately 1.587 inches, and a width of less than 1.75 inches, approximately 1.339 inches.

**Accused Product #4 – Anker 521 Charger (Nano Pro)**

46. Defendants make, use, offer for sale and sell Anker 521 Charger (hereinafter referred to as "521 Charger"). Examples of the 521 Charger distributed by Defendants are shown below.

 

47. Defendants advertise the use of and sell its 521 Charger which is a c*harger* that is to be connected between a source of AC power, such as a wall outlet, and a device such as a mobile phone that includes a battery with the battery being rechargeable through the use of DC power.

48. In particular, the 521 Charger distributed by Defendants employ a reduced plug-size charger plug, that upon plugging the 521 Charger into a source of AC power such as a wall outlet, the 521 Charger does not block or interfere with the use of adjacent outlets.

49. Moreover, the size and shape of the 521 Charger are such that a power cord for the device to be charged may be easily inserted into and removed from the 521 Charger while the

charger is plugged into the source of AC power and removal of the power cord from the 521 Charger can be accomplished without removal of the charger from the source of AC power.

50. Attached hereto as **Exhibit 7** is a Claim Chart that illustrates each element of the infringing 521 Charger as compared to Claim 1 in the '794 Patent.

51. Defendants infringed at least one of the claims of the '794 Patent by offering to sell and by selling a charger plug identified as 521 Charger.

52. The 521 Charger has a longitudinal length less than 2 inches, approximately 1.758 inches, and a width of less than 1.75 inches, approximately 1.333 inches.

**Accused Product #5 – Anker 511 Charger (Nano 3, 30 W)**

53. Defendants make, use, offer for sale and sell Anker 511 Charger (Nano 3, 30 W) (hereinafter referred to as "511 Charger"). Examples of the 511 distributed by Defendants are shown below.




54. Defendants advertise the use of and sell its 511 Charger which is a *charger* that is to be connected between a source of AC power, such as a wall outlet, and a device such as a

mobile phone that includes a battery with the battery being rechargeable through the use of DC power.

55. In particular, the 511 Charger distributed by Defendants employ a reduced plug-size charger plug, that upon plugging the 511 Charger into a source of AC power such as a wall outlet, the 511 Charger does not block or interfere with the use of adjacent outlets.

56. Moreover, the size and shape of the 511 Charger are such that a power cord for the device to be charged may be easily inserted into and removed from the 511 Charger while the charger is plugged into the source of AC power and removal of the power cord from the 511 Charger can be accomplished without removal of the charger from the source of AC power.

57. Attached hereto as **Exhibit 8** is a Claim Chart that illustrates each element of the infringing 511 Charger as compared to Claim 1 in the '794 Patent.

58. Defendants infringed at least one of the claims of the '794 Patent by offering to sell and by selling a charger plug identified as 511 Charger.

59. The 511 Charger has a longitudinal length less than 2 inches, approximately 1.360 inches, and a width of less than 1.75 inches, approximately 1.082 inches.

### Accused Product #6 – Anker PowerWave Stand

60. Defendants make, use, offer for sale and sell Anker PowerWave Stand (hereinafter, "Anker Wireless Charger"). An example of the Anker Wireless Charger distributed by Defendants is shown below.



61.     Defendants advertise and sell its Anker Wireless Charger which as a Qi-compliant *wireless charger* that is to be connected between a source of AC power, such as a wall outlet, and a device such as a mobile phone that includes a rechargeable battery.

62.     Qi (pronounced "chee") is one of the global wireless charging standards for providing 5-15 watts of power to small personal electronics. Though it is primarily used to charge smartphones, the standard can also apply and easily be used to provide power for a growing number of consumer devices.

63.     Qi is an open standard, and Qi-enabled mobile electronic devices are able to connect to Qi-certified (or Qi-compliant) chargers from any manufacturer.

64.     Devices that operate using the Qi standard rely on electromagnetic induction between coils. A Qi system consists of two devices – the transmitting device (the charger), which is connected to a power source and provides inductive power, and the mobile device (to be charged), which consumes inductive power. The transmitting device comprises a transmitting

coil that generates an oscillating magnetic field; the mobile device contains a power receiving coil. The magnetic field induces an alternating current in the receiving coil of the mobile device, by Faraday's law of induction, thereby charging the battery of the mobile device.

65. In order for a wireless charger to function optimally and efficiently, the wireless charging device must have internal monitoring circuitry to detect when a mobile electronic device requires charging or is fully charged. The internal circuitry further comprises one or more internal switches (mechanical or electrical) that control the flow of current based on the charge-status of the battery of the mobile electronic device. Furthermore, the internal circuitry of the wireless charger requires a novel load sensing portion, which senses the frequency of pulses rather than sensing the magnitude of a voltage and/or current, to determine the load being drawn, and to determine an "off" state for the device.

66. In particular, the Anker Wireless Charger utilizes the internal monitoring and switch circuitry features, and all elements of the charging device, as claimed by one or more claims, including but not necessarily limited too, Claims 24 and 33 of the '833 Patent and Claims 31, 32 and 39 in the '648 Patent.

67. Attached hereto as **Exhibit 9** is a Claim Chart that illustrates each element of the infringing Anker Wireless Charger as compared to Claims 24, 33 and in the '833 Patent, and Claims 31, 32 and 39 in the '648 Patent.

68. Defendants infringed at least one of the claims of the '833 and the '648 Patent by offering to sell and by selling a wireless charger identified as Anker Wireless Charger.

## COUNT I
## DIRECT INFRINGEMENT OF U.S. PATENT NO. RE48,794 E

69. Voltstar repeats, realleges, and incorporates by reference, as if fully set forth herein paragraphs 1 through 68, as set forth above.

70. Within the six years preceding the filing of this Complaint, Defendants have directly infringed at least one claim of U.S. Patent No. RE48,794 E by making, using, selling, offering for sale in the United States, and/or importing into the United States its 20 W Cube, Powerport III Nano, Nano II Pro, 521 Charger and 511 Charger, in violation of 35 U.S.C. § 271(a).

71. Without limiting the foregoing, Defendants have infringed at least Claim 1 of the '794 Patent as described in the Claim Chart attached hereto as **Exhibits 4-8**.

72. Defendants' acts of making, using, selling, offering for sale in the United States, and/or importing into the United States infringing products have been without license, permission, or authorization from Voltstar.

73. Defendants' infringement of the '794 Patent has injured and continues to injure Voltstar in an amount to be proven at trial, but not less than a reasonable royalty.

## COUNT II
## DIRECT INFRINGEMENT OF U.S. PATENT NO. 7,910,833

74. Voltstar repeats, realleges, and incorporates by reference, as if fully set forth herein paragraphs 1-68, as set forth above.

75. Within the six years preceding the filing of this Complaint, Defendant has directly infringed at least one claim of U.S. Patent No. 7,910,833 by making, using, selling, offering for sale in the United States, and/or importing into the United States its Anker Wireless Charger, in violation of 35 U.S.C. § 271(a).

76. Without limiting the foregoing, Defendants have infringed at least Claim 24, 33 and 36 of the '833 Patent as described in the Claim Chart attached hereto as **Exhibit 9**.

77. Defendants' activities referred to in this Count have been without license, permission, or authorization from Voltstar.

78. Defendants' infringement of the '833 Patent has injured and continues to injure Voltstar in an amount to be proven at trial, but not less than a reasonable royalty.

## COUNT III
## DIRECT INFRINGEMENT OF U.S. PATENT NO. 7,960,648

79. Voltstar repeats, realleges, and incorporates by reference, as if fully set forth herein paragraphs 1-68, as set forth above.

80. Within the six years preceding the filing of this Complaint, Defendants have directly infringed at least one claim of U.S. Patent No. 7,960,648 by making, using, selling, offering for sale in the United States, and/or importing into the United States its Anker Wireless Charger, in violation of 35 U.S.C. § 271(a).

81. Without limiting the foregoing, Defendants have infringed at least Claim 31, 32 and 39 of the '648 Patent as described in the Claim Chart attached hereto as **Exhibit 9**.

82. Defendants' activities referred to in this Count have been without license, permission, or authorization from Voltstar.

83. Defendants' infringement of the '648 Patent has injured and continues to injure Voltstar in an amount to be proven at trial, but not less than a reasonable royalty.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff Voltstar Technologies, Inc. demands judgment and relief against Defendants Fantasia Trading LLC, Anker Innovations Co. Limited, and Anker Technology Corporation and respectfully requests that the Court:

A. An entry of judgment holding that Defendants have infringed and is infringing the patents-in suit;

B. For an accounting and an award of damages sufficient to compensate Voltstar for the infringement in no event less than a reasonable royalty pursuant to 35 U.S.C. § 284;

C. A determination that Defendants' infringement has been willful, wanton, and deliberate and that the damages against it be increased up to treble on this basis or for any other basis in accordance with the law;

D. A finding that this case is an exceptional case under 35 U.S.C. § 284 and an award to Voltstar of its costs and reasonable attorneys' fees as provided by 35 U.S.C. § 285;

E. An accounting of all infringing sales and revenues, together with post judgment interest and prejudgment interest from the first date of infringement of the '794 Patent; and

F. That Voltstar is entitled to such other and further relief as to the Court appears just and proper.

# JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

| | |
|---|---|
| DATED: July 6, 2023 | Respectfully submitted, |

*/s/ Joel B. Rothman*
JOEL B. ROTHMAN
Washington Bar Number:  57717
joel.rothman@sriplaw.com

**SRIPLAW, P.A.**
21301 Powerline Road
Suite 100
Boca Raton, FL  33433
561.404.4350 – Telephone
561.404.4353 – Facsimile

*Attorney for Plaintiff Voltstar Technologies, Inc.*